UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO.: 3:25CR222 (KAD) |
| vs. | : | |
| | : | |
| SALIM SAKAL | : | June 1, 2026 |

## DEFENDANT'S SENTENCING MEMORANDUM

Defense Counsel, Albert Y. Dayan, respectfully submits this memorandum in advance of Defendant, Salim Sakal's sentencing currently scheduled for June 22, 2026.

### 1. Introduction:

On January 27, 2026, pursuant to government's notice to surrender, Mr. Sakal appeared in Connecticut federal court and -on the same day- unequivocally acknowledged his participation in a criminal conspiracy to sell and receive stolen goods.

At the outset of our memorandum, we pray that this Honorable Court, the government and to the victims in this case hear and believe that Mr. Sakal is heartbroken over the physical, emotional and financial devastation his actions have caused the victims in this case. As a religious man, Mr. Sakal is embarrassed and terrified for the consequences of his actions having caused harm to innocent victims.

As a religious man, Mr. Sakal, knows all too well that his participation in a criminal conspiracy to receive and sell stolen goods flies directly in the face of many, if not all, but particularly his own, religions in this world. For that he is contrite, embarrassed, ashamed and fearful the most. At the hour of his sentencing before this Honorable Court, he prays first and foremost for the welfare of the victims before his own. At his judgment before God, with true repentance, he prays for forgiveness, mercy, compassion and for a chance to make it wright.

Mr. Sakal is not a wealthy man. But he will do what he can at this stage to make the victims whole as soon as possible by bringing several certified checks on the date of his sentencing totaling between two hundred and fifty thousand dollars and three hundred and fifty thousand dollars. Moneys that he was able to and hopes

1

to continue raise, earn and if necessary burrow from members of his community wherein with talent he leads in prayers three times per day, on all high holidays, circumcision, bar mitzvas, bat mitzvas and every other happy and grieving human events in his community where prayers are necessary.   Subject to this Court's guidance Mr. Sakal is asking to divide the monies that he is able to raise at this time between the uninsured victims who have been devastated due to this criminal conspiracy.

After his initial payment at sentencing, Mr. Sakal is committed to making aggressive monthly payments of at least three thousand dollars per month even if he has to work harder to earn it and pay back to the victims in this case.

Mr. Sakal's monetary pledge at sentencing is not pursuant to any terms of the plea agreement nor is it solely because of any favor we hope to gain in the eyes of the Court.  It will be paid by Mr. Sakal to reflect genuine remorse and pain he feels for the victims in this case.

The big question here, is how does one reconcile a man who had purchased the stolen jewelry in this case, with what seemed to be complete disregard for human pain and suffering for potential victims,  with the same man who was himself a victim of persecution and suffering as jew in Syria, who is also a God fearing man and who  is also the same man willing to aggressively repay every dime the victims lost in this case.

There is no simple answer.   But, viewing his immediate family dynamics and financial pressures he was dealing with at the time, he simply did not think it through when purchasing the stolen items.  The "victims" part of purchases he was making simply did not enter his mind at the time.  Your Honor, if Mr. Sakal thought of any type of victims' sufferings, particularly the types that were detailed in the victim impact statements in this case, would have entered Sakal's mind at the time he purchased the goods, he would certainly not do it.   One need not be a religious man, if one has some degree of conscience, to know that nothing good is going to come out of making a profit on the pain and suffering of others, particularly from theft.

Mr. Sakal is such a man with a conscience.  He is not just a man with "some degree of conscience."  He is conscientious toward life and other human beings. He is a spiritual and devout man who, unfortunately for him and his family, had a complete lapse of judgement between wright and wrong and the probable dire consequences his unlawful acts would cause innocent people.

Should Mr. Sakal have foreseen the probability of such dreadful consequences to others when purchasing the items he knew to be stolen? In retrospect, the answer is **Yes**.  But, unfortunately, at the time he was making the purchases he did not envision the possibility of the harm suffered by the victims in this case.  His lack

2

of comprehension for the possible harm his actions caused others is Not an excuse.  It is simply an illustration into his mind at the time he was making the purchases to assist the Court in formulating an appropriate sentence for Mr. Sakal.

We respectfully draw Your Honor's attention to Mr. Sakal's lack of education. The turmoil that he, as a parent, had to deal with two very complicated children and an ill wife.  We ask this Court to consider that even though Mr. Sakal was involved in purchasing the stolen items, he did not think as far as to imagine victims such as Sara Bano, Altyn Jewelry, and Said Bouaouad.  "Notably, while the offense resulted in substantial financial hardship to one or more victims…the defendant did not personally cause that substantial financial hardship…" (PSR Par.41).  We humbly and respectfully ask Your Honor, to structure a sentence that is not greater than necessary to achieve the ends of justice in this case.

We respectfully suggest that this Honorable Court's sentence need not be custodial in nature.  Rather, we respectfully suggest sentencing Mr. Sakal to sixty months of probation with vocational and psychological programs to help him deal with his family's difficulties, allowing him to work under strict supervision of the probation department, to take care of his family and to aggressively pay restitution in this case.

Poignantly, under the facts of this case, from the fateful day of his arrest, prosecution, sentencing, restitution, forfeiture, embarrassment in his religious community, stress and anxiety for the unknown sentence of this and the higher Court, even a probationary sentence will continue to cause Mr. Sakal mental, emotional, physical and financial suffering and hardships for years and years to come.  If not for the rest of his life.

As well, undoubtedly, volumes can be written about the sufferings endured by the victims in this and similar cases.  They suffered awful financial, emotional and physical hardships in this case.  It is for that matter, that Mr. Sakal wants to and will bring as much certified funds to his sentencing according to this Court's designation as to who the checks should be made payable to.   We, humbly and respectfully, suggest that the uninsured victims should be made whole immediately if possible.

2.  **The Financial Offense Conduct:**

Mr. Sakal purchased stolen jewelry that he knew was stolen at the time, alleged and undisputed at the highest retail-value of $2,471,457.  However, there are at least Five critical factors that mitigate his complicity and financial gain, or lack thereof, in this case that we ask Your Honor to consider at sentencing.  One, notwithstanding that he purchased some of the items from the seven burglaries in

this conspiracy for which he is legally responsible for the whole amount in restitution, he did not purchase all of the items from the seven burglaries. Some of the items he purchased from the co-conspirators in this case were counterfeit goods that he paid premium for and he still has in his possession for display if necessary. The items he did purchased were only slightly discounted. As for the other goods that he did not purchase, the co-conspirators either asked for too much or simply refused to sell. Two, the government in this case has confiscated approximately one million dollars' worth of jewelry from Mr. Sakal and his brother at the time of his arrest. Mr. Sakal and his brother are waiving their rights to said jewelry in hopes that the same would be applied toward making the victims whole. Three, as discussed above, Mr. Sakal, is working hard on putting together approximately three hundred thousand dollars for the date of his sentencing. Four, Mr. Sakal is committed to aggressively repaying the rest of his financial obligations to the victims in this case. Five, "Notably, while the offense resulted in substantial financial hardship to one or more victims…the defendant did not personally cause that substantial financial hardship…" (PSR Par.41). For all of the above reasons, we respectfully ask Your Honor to view Mr. Sakal outside the hub of 'similarly' situated defendants in this and other cases. He has inflicted upon himself one of the harshest financial punishments that he will probably endure for the rest of his life.

### 3. Guidelines Calculation:

Mr. Sakal pleaded guilty to an Information charging him with a violation of 18 U.S.C. Sec 371. Specifically, he pleaded guilty to conspiracy to sell and receive stolen goods. Under the facts of this case, the base offense level for a 18 U.S.C. Sec. 371 is level +**6**. As agreed to by the parties in the plea agreement, and noted in the PSR, Mr. Sakal's attributable loss is approximately $2,471,457. Pursuant to USSG Sec. 2B1.1(b)(1)(I), if the loss was more than $1,5000,000, but less than $3,500,000, +**16** levels are added. Pursuant to USSG Sec. 2B1.1(b)(2)(A)(iii), since the offense resulted in substantial financial hardship to one or more victims, **2** levels are added. Pursuant to USSG Sec. 2B1.1(b)(4), since the offense involved receiving stolen property and, as we stipulated that arguably Mr. Sakal can technically/statutorily be viewed as such, the defendant was a person in the business of receiving and selling stolen property, increase by +**2** levels. Timely acceptance of responsibility, decrease by -**3** levels. As stipulated by parties and the PSR, Mr. Sakal meets the criteria at USSG Sec. 4C1.1(a)(1)(11). Therefore, he is a Zero-Point Offender, and the offense level is reduced by -**2** levels. Total Offense level **21**. The Federal Sentencing Guideline recommendation for Level 21, is **37-46 months**.

### 4. Applicable Sentencing Law

"In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court

must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider several factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* § 3553(a)(2).

5.  **For the forthgoing reasons, respectfully, we ask this Honorable Court to impose a Sentence of 60/Months of probation with full restitution ,**

Undeniably, the offense in this case is inexcusable. And, we agree that retribution, general deterrence and, quite frankly, justice require punishment. Still, we plead with Your Honor to measure this Court's justice with consideration for Mr. Sakal's lack of education, his family tragedies, his extraordinary post crime rehabilitation and self-inflicted financial hardships in his earnest attempt to make the victims as whole as possible now and into the future.

Respectfully, not presumptively, considering all the factors in this case prior to and post Mr. Sakal's arrest, I submit to this Honorable Court that a sentence culminating in sixty months of supervision under federal probation, with counseling and restitution reflects the seriousness of his offense, promotes respect for the law and effectively provides for a just result.

Thank You, Your Honor.

Respectfully submitted,

Albert Y. Dayan, Esq.
Attorney at Law for Defendant

c.c.    AUSA David Huang