United States District Court
District of Connecticut
FILED AT BRIDGEPORT

Date _____7/8/2026_____

By_____ L. Limberti _____
Deputy Clerk

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

Plaintiff,

v.

SALIM SAKAL,

Defendant.

Case No. 3:25-cr-00222 (KAD) Hon. Kari A. Dooley

## Immediate Reply of Proposed Intervenor Inner City Press to the Government's Response (Doc. No. 56) in United States v. Sakal, No. 3:25-cr-00222 (KAD)

Inner City Press respectfully submits this reply to the Government's Response (Doc. No. 56) to its Motion to Intervene (Doc. No. 54), filed pursuant to the Court's order (Doc. No. 55). The government does not object to intervention under Local Rule 57.1(f), and Inner City Press accordingly asks that intervention for the limited purpose of opposing sealing be granted. Three points require this reply, which is being emailed to all counsel of record, and to chambers, given the long delay - past the sentencing itself, coverage of which triggered the request to unseal - in the docketing of the previous motion.

### I. The Government's Attack on Inner City Press's Reporting Is Irrelevant and Improper

The government prefaces its response by noting "the proposed intervenor's repeated public statements criticizing this Court in its online publication," and attaches four Inner City Press articles as Exhibits 1-4 — not for any fact they establish about the

sealed materials, but solely to place the intervenor's viewpoint before the Court. Inner City Press objects to this ad hominem approach.

First, the right of access does not depend on the identity, motive, or viewpoint of the person asserting it. The presumption of access attaches to judicial documents for the benefit of the public at large; it is "not conditioned on" the requester making any showing of need or purpose, Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 123 (2d Cir. 2006), and the Second Circuit has instructed that the motives of the party seeking access do not diminish the presumption. See United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995). Whatever the government thinks of Inner City Press's coverage, the access rights at stake belong to the public, of which Inner City Press is a part and for which it reports.

Second, criticism of courts is not a demerit to be weighed against a journalist; it is speech at the core of the First Amendment's protection. "A trial is a public event. What transpires in the court room is public property... Those who see and hear what transpired can report it with impunity." Craig v. Harney, 331 U.S. 367, 374 (1947). The Supreme Court there added that judges are expected to be persons "of fortitude, able to thrive in a hardy climate" of public commentary. Id. at 376; see also Bridges v. California, 314 U.S. 252 (1941); Landmark Communications, Inc. v. Virginia, 435 U.S. 829 (1978). The government's suggestion that a publication's criticism of a court bears on its entitlement to access — access enjoyed identically by the most laudatory outlet — is a suggestion that access may be rationed by viewpoint. Cf. Sherrill v. Knight, 569 F.2d 124, 129-30 (D.C. Cir. 1977) (press access may not be denied arbitrarily or based on the content of reporting). It cannot be.

Third, if anything, the government's exhibits prove the public interest: they show that this case — a fraud prosecution in which victims' restitution turns on the defendant's actual finances — is being followed and reported. That is the presumption of access working as intended.

**II. On the Merits: The Government Itself Put Sakal's Finances Before the Court, and Ability to Pay Restitution Is a Matter of Legitimate Public Interest**

The government's response concedes the dispositive facts. It acknowledges that "the issue of Sakal's ability to pay" was "raised by the government in its sentencing memorandum and referenced at sentencing." Doc. No. 56 at 2. Under Lugosch and this Circuit's decision in Lee v. Greenwood, 145 F.4th 248 (2d Cir. 2025) — the very case the government cites — materials submitted to influence a sentencing determination are judicial documents to which the presumption of access attaches at its strongest, and sealing requires specific, on-the-record findings that redaction is narrowly tailored to a higher value. The passage of Greenwood the government quotes lists interests that "may justify redactions"; it does not hold that a convicted defendant's finances are categorically sealable — least of all where the government itself deployed those finances in aid of its sentencing and restitution positions.

The public interest here is concrete, not abstract. Mr. Sakal was convicted of fraud; his victims' recovery depends on restitution; and the restitution schedule the parties agreed to — a monthly amount the government stresses is "not in dispute" — can only be evaluated by the public against the defendant's actual balances, expenditures, and assets, including any trusts or expectancies. That the parties agree between themselves is precisely why public scrutiny matters: the public is entitled to assess whether a fraud defendant with substantial undisclosed means is repaying victims at a token monthly rate. Account balances and expenditures of a convicted fraudster, urged on the Court by the prosecution at sentencing, are not "family affairs, illnesses, [or] embarrassing conduct with no public ramifications," Greenwood, 145 F.4th at 256 — they are the ramifications. Inner City Press has already agreed that Social Security numbers, account and routing numbers, personal telephone numbers, and third-party witness identifying information should be redacted. Doc. No. 54-1 at 3-4. What remains in dispute — the financial substance — is what the presumption protects.

**III. Redacted Versions Filed Under Seal Are Not Redacted Versions**

Finally, the government states that it has "filed under seal for the Court's examination redacted versions of Exhibits 1 through 3." With respect, a redacted version filed

under seal is a contradiction in terms: the entire office of a redacted version is to be the public version. The government's approach — under which the prosecution and the Court see the proposal, but the intervenor whose motion occasioned it and the public cannot — replicates the very problem intervention was sought to address. Inner City Press respectfully requests that the proposed redacted versions of Exhibits 1 through 3 be docketed publicly, so that any remaining disputes over particular redactions can be identified and, if necessary, briefed with particularity; and that any redactions beyond those Inner City Press has already conceded be supported by the specific, on-the-record findings Lugosch and Greenwood require.

**Relief Requested**

Inner City Press respectfully requests that the Court: (1) grant intervention, which is unopposed; (2) direct that the government's proposed redacted versions of sentencing Exhibits 1 through 3 be filed on the public docket; (3) decline to seal account balances, expenditures, asset, trust, and ability-to-pay information that the government itself placed before the Court at sentencing, absent particularized findings; and (4) disregard the government's Exhibits 1 through 4 as irrelevant to the access analysis.

Inner City Press thanks the Court for ordering a response to its motion and for its consideration. This reply is being emailed to all counsel of record, and to chambers, given the long delay - past the sentencing itself, coverage of which triggered the request to unseal - in the docketing of the previous motion.

Respectfully submitted,

/s/

Matthew R. Lee

Inner City Press

matthew.lee@innercitypress.com

cc: AUSA David T. Huang & Counsel for Defendant Sakal (via email)